# **EXHIBIT A**

SETH R. LESSER
srlesser@blbglaw.com
212-554-1442

July 25, 2001

**PRIVILEGED AND CONFIDENTIAL**
**FOR SETTLEMENT PURPOSES ONLY**

<u>VIA FACSIMILE AND FEDERAL EXPRESS</u>

James Donato, Esq.
Cooley Godward LLP
20th Floor
One Maritime Plaza
San Francisco, CA 94111-3580

  Re: <u>In re: Matchlogic Internet Privacy Litigation</u>

Dear Jim:

  This letter follows up on our conversation concerning the possibility of a prompt resolution of this litigation. This letter and its contents are provided in the context of a settlement discussion and are therefore privileged and not to be used for any purpose other than discussion of settlement.

  Three points came out of our conversation and I will address them in turn.

  First, in order to more appropriately structure a settlement, plaintiffs need a fuller understanding of how Matchlogic operates. Particularly, after reviewing the materials you provided, we remain unclear as to: (1) what "data" is associated with a user identification in the Matchlogic database; (2) how Matchlogic obtains the demographic information it uses to target advertisements (e.g., gender, income range, presence of children); (3) whether Matchlogic has ever attempted to correlate registration data with user information collected for ad-serving or email purposes; (4) whether Matchlogic has ever attempted to mine its data files to obtain personally identifiable information about Internet users or correlate user identities with personally identifiable information; and (5) the extent of data captured in Matchlogic's log files (specifically, Matchlogic's capture of URL referrer strings). A technical person familiar with Matchlogic's practices could probably answer these questions and any follow-on questions we may have in

James Donato, Esq.
July 25, 2001
Page 2

short order.   This is why we propose sitting down with you and our expert to have a question and answer session.

Second, assuming what you intimated and what we have seen in the materials provided is borne out as to these points, we think a settlement can be crafted along the lines of the Amazon/Alexa settlement.   As you know, that settlement had two basic components: (1) a fund set aside (there, $1.9 million) against which individuals could submit claims which Matchlogic could compare against its files to determine if any personally identifiable information had been captured about those individuals and a guaranteed *cy pres* component as well as a roll-over of unclaimed funds to the *cy pres* component, and (2) various forms of programmatic relief.

With respect to programmatic relief, we need to include items that would promote the core fair information practice principles of notice, choice, access, and security.   Set forth below is a list of the types of items that would achieve the kind of goals we are seeking.   We present this list as a starting point for discussions since some of the items might be moot or impracticable. The more comprehensive the programmatic relief, however, the sounder the footing for the retention of jurisdiction discussed below.   We suggest the following:

  A.  Improving Matchlogic's Privacy Policy.   Matchlogic's privacy policy could probably be improved.   We note, for instance, that it fails to disclose the possibility of URL captures and seems to suggest that no such thing occurs.   Also, the opt-out process is somewhat buried and could be more prominent.

  B.  Improving Internal Matchlogic Security Policies.   For example, if Matchlogic has been creating, and retaining for some period of time, log files for its servers, this is a predominant area of concern to plaintiffs.   Accordingly, we would wish to see the implementation of a strict security policy to ensure (1) that access to the log files is strictly controlled in terms of Matchlogic employees and any third-party vendors; (2) that a specific log file security policy be created, disseminated and enforced; and (3) that old log files be periodically purged on a rolling, going-forward basis.

  C.  Cookie longevity.   Matchlogic cookies should be set to expire for a period substantially less than they are currently set.

  D.  Tracking/Data Collection

    1.  Where Matchlogic collects and uses personally identifiable information ("PII data"), Internet users will be presented with a clear and conspicuous notice, and agree to such use in an agreed-upon form and presentation that

James Donato, Esq.
July 25, 2001
Page 3

        we can discuss.   Also:

        a.    Information collected under one policy will not be used in any manner inconsistent with that policy without affirmative choice through an opt-in procedure.

        b.    For any user who opts-out of any collection of data, Matchlogic shall reset such a user's Matchlogic ad serving cookie in order to prevent any merger of the user's PII data with any non-PII data thereafter.

    2.    An explicit agreement that Matchlogic not track and/or profile clickstream information concerning sexual matters, health or medical matters and personal financial information from any Web site or Web page.

    3.    An agreement that Matchlogic will not conduct tracking or profiling of Internet users' interest information on any client Web site which does not post its own Internet privacy policy and explicitly disclose in this policy that users' interest and other information is being gathered from the site by Matchlogic (or a marketing partner of the Web site) through the use of cookies in conjunction with banner ads and/or clear GIFs, if clear GIFs are being used, the type of information that is being gathered and the uses to which such information will be put.

E.    A successor-in-interest lock-up entered by the Court in any final judgment.

F.    Audit Requirement.   The engagement of an independent auditor over the next three years to ensure that Matchlogic is complying with the terms of its privacy policies and the terms of any settlement agreement in this case.

G.    Public Information Campaign/Restitution.   Matchlogic will commit to creating a fund to pay for a media campaign designed to educate consumers about privacy on the Internet

H.    Matchlogic will commit to establishing a mechanism to educate and inform its clients about Internet privacy.

As we discussed, Matchlogic would pay, as part of the settlement, for the costs of notice and administration.   As to notice, we think a combination of Internet notice and publication makes the most sense.   And there would also be the payment of reasonable attorneys fees and

CONFIDENTIAL

James Donato, Esq.
July 25, 2001
Page 4


costs in an amount to be negotiated.

      The final component of the settlement, and the third point we discussed, is that we would envision having the Court continue to exercise jurisdiction so as to provide forward looking protection to the company.   See, e.g., Liddell v. State of Mo., 731 F.2d 1294, 1326 (8th Cir. 1984) ("We specifically approve the settlement agreement insofar as it relieves the participating county school districts of liability if they meet the goals set forth in the settlement plan within five years"); Vulcan Soc., Etc. v. Fire Dept., etc., 505 F.Supp. 955, 959 (S.D.N.Y. 1981) ("the proposed judgment contained general provisions vesting the Court with continuing jurisdiction; ... deeming compliance with the judgments to constitute compliance with applicable federal equal employment laws").   That way, should a class member seek to challenge Matchlogic's conduct he or she either (1) would have no claim by virtue of the terms of the settlement if they were a class member or (2), even if he or she were not a class member at the time of the settlement and hence not specifically bound by the releasing terms of the settlement, his or her claim could be enjoined and/or routable to the Court – which would provide a most substantial disincentive to anyone seeking to bring a such a claim.   See, e.g. Matter of VMS Securities Litigation, 103 F.3d 1317, 1324 (7th Cir. 1996) ("in the context of complex class action litigation, a federal district court may appropriately use the All Writs Act to remove and enjoin the prosecution of subsequent state court claims in order to enforce its ongoing orders against relitigation and to guard the integrity of its prior rulings over which it had expressly retained jurisdiction").

      The above principles form the framework of a possible settlement.   Again, we offer this level of detail and suggestion in the spirit of being able to devise terms for expedited consideration that we could move quickly on.

      We look forward to your prompt response.

                Sincerely yours,


                Seth R. Lesser
                Bernstein Litowitz Berger & Grossmann LLP


                Dennis Stewart
                Milberg Weiss Bershad Hynes & Lerach LLP

James Donato, Esq.
July 25, 2001
Page 5

        Bryan Clobes
        Miller Faucher & Cafferty

SRL/hs

CONFIDENTIAL

ATHOME_0028786